All right, we'll call the next case, case number 244032, Jenny v. L3Harris Technologies, Inc. Good morning, Your Honors. May it please the Court, my name is Andrew Stavros. I represent the appellant, David Jenny, in this matter. Mr. Jenny was a long-time employee over 27 years of L3Harris and its predecessors and interests, and he was terminated in November of 2019. Following his termination, he brought claims under the Americans with Disabilities Act and the Rehabilitation Act, alleging that he was discriminated against and retaliated for requesting an ADA accommodation. After filing his claims, discovery commenced, and at the end of discovery, the employer filed a motion for summary judgment, seeking to dismiss all of Mr. Jenny's claims, and that motion was granted. The basis for the appeal is that the Court erred. Number one, it misapplied long-standing precedent of the United States Supreme Court and this Court that has repeatedly held that when an employee establishes their prima facie case and also show pretext by showing that the employer's explanation is demonstrably false, that they are entitled to take their case to the jury. That's all they have to show? I mean, they don't have to show any nexus? They don't have to show that it was that that caused the termination? They do have to show a nexus, Your Honor, but this Court and the Supreme Court has held that the way that they can show that is by showing that the articulated reason that the employer gave for the termination is in fact demonstrably false, and in that situation, a finder of fact and not the Court is allowed to decide whether or not the reason for the pretext was ultimately discriminatory. And so, just like in any other type of case, as Reeves points out, the employer is independent. Even if you can show that the stated reasons are untrue, don't you further have to show that the reason why there was the termination was because of the disability? No, no, Your Honor. Are you saying if we were to require that, that would be pretext plus? Is that what you're saying? Yes, it would be because you're usurping the authority from the jury to decide the ultimate issue as to whether or not the false explanation for the reason for the termination was a pretext for discrimination. And it doesn't carve out, Your Honor, the obligation to show an inference of discrimination because that is ultimately part of the prima facie case. The third element of the case, whether it's a case of ADA discrimination or retaliation, requires the plaintiff to come forth with evidence of an inference of discrimination. The pretext element is the additional evidence that moves the ball to allow the jury to say, ultimately, was discrimination or retaliation the reason that the employer took the action? And part of the reasoning for these decisions is rarely is an employer going to put in a personnel file the reasons that actually motivated the decision to terminate or take some other adverse action against an employer. So employment cases, like many other cases, rely considerably on circumstantial evidence, including showing that an employer made a demonstrably false reason for the termination. Now, it is correct that in Reeves, the court carved out two narrow sections to that general rule. But this case in Hare indicated that an employer has a heavy burden, a very heavy burden, in showing that those two exceptions in Reeves would entitle the employer to some re-judgment. Did the district court discuss those two exceptions? She did, Your Honor. The district court did discuss those exceptions, but she relied on only two facts to find that there was conclusively a reason for the decision other than discrimination or retaliation. And what the district court relied on was the fact two issues. Number one is there was a conversation between Mr. Jenny and his supervisor that occurred in an off-site meeting where, for the first time, Jenny was notified that he wouldn't be in a position that had been retitled and that he would be placed in an individual contributor role. And following that discussion, the next day, Mr. Jenny's supervisor went to HR and included him in a RIF. Those are the only two facts that the district court even discussed or considered in invoking the exceptions under Reeves. Well, the mechanism of the termination was his placement on the RIF, correct? Correct. And that, when was the RIF originally created? Well, the RIF, what had happened, Your Honor, is that L3 Technologies and Harris Corporation had merged in July of 2019. Give me a date. October 23 is the date of the meeting at the Cottonwood Club. Correct. What's the date when the RIF was prepared? When you say prepared, Your Honor, you mean Mr. Jenny's inclusion in the RIF? No, no. I know when he was included in the RIF. When was the RIF created that did not include Mr. Jenny? That is not in the record, Your Honor. It's not clear from the record when these other employees that were part of the RIF were also terminated. What is clear from the record is there was a deadline. Mr. Banton, who was a VP of HR for the employer, was working on a final list of people to include that was supposed to be sent to legal on October 24th of 2019. As to when the other employees were notified as to when they were RIFed, I don't think that's in the record. If I were to go to the record and go through it page by page, could I put together at least a reasonable estimate of when the RIF was originally prepared? I mean, was it June, July, August, September? When? I don't think that's in the record, Your Honor. But could I piece it together to get some idea? Well, the record indicates that immediately in July, because of the merger, the company started a role mapping where they were trying to have similar titles and positions. They eliminated the senior director role that Mr. Jenny held. This was a function that HR did. It had nothing to do with his supervisor. So the merger was in what, June? And it was completed, I believe, July 1 of 2019. So after that date is when they started first working on the role mapping, Your Honor, and then went to the RIF. The original RIF was created sometime between July 19 and October 23rd. I don't think it could have started in July, Your Honor, just because they had to. It was sometime in that range. Correct. You tell me you can't tell what. Correct. So it's without a doubt that Jenny was not on the proposed RIF until after the October 23 meeting. That is correct, Your Honor. But I think a key fact, and Mr. Gentile, who was Mr. Jenny's boss, who alleged that he's the one that made the decision to terminate, indicated that he had no role in placing any employee on the RIF. His testimony in his deposition was clear. In other words, this was entirely a process that was done by HR. While he knew the RIF was undergoing, he had no role in deciding who would be included in the RIF. And he testified to that. Wouldn't you think that if he had concerns about Mr. Jenny's disability, which he knew about, that he would have put him on the RIF because he had authority to do so, because he did it after October 23rd? Yeah, Your Honor, I agree. I think because he had concerns about his disability, he ultimately did put him on the RIF. No, no, no. That isn't how I articulated the question, so don't do that. He knew about the RIF, and he could have put Jenny on the RIF before October 23rd, but he didn't do so, correct? Correct. And if he did so only after the meeting, so he had authority before and didn't put him on it, but he put him on it after the meeting. Is that a fair statement? That is a fair statement, Your Honor. Isn't that just going to indicate that the reason for putting him on the RIF list was because of what happened at the October 23rd meeting rather than his disability? No, Your Honor, for two reasons. Number one, he could have been planning to RIF or terminate Jenny all along at the end of the RIF and after he announced his organizational plan. But that's not good enough. You've got to give me something else. Could have is not good enough to negate this. Well, I think it is, Your Honor, because if we look at this, what the courts typically see in these cases is oftentimes a plaintiff is using the argument of timing and proximity to advance their claim to show intentional discrimination. Here, it's the employer that's relying solely on timing to claim that Mr. Jenny could not have been discriminated because he happened to be included on the RIF the day after the discussion. The Tenth Circuit and the Supreme Court has made clear that timing alone cannot justify denying summary judgment on behalf of a plaintiff. I think the corollary is also true. It is not significant enough to deny or to grant summary judgment in an employer's favor, especially where you have all of the evidence that Mr. Jenny proffered. The timing between his supervisor's knowledge of his request for accommodation and essentially being removed from his position. The denial of two travel requests, including one for a significant client. Mr. Jenny worked partly on commission and the revenue that he generated. So the denial of travel requests that occurred between August and September was also significant. So I think the court was, while it's true that a jury could ultimately say maybe that was the nexus, that was a question that was appropriate for the jury and not for the district court. And unless there are any other questions, I'd like to leave the remainder of time for rebuttal. Thank you. Thanks, Counselor. May it please the Court. Mark Tolman and the Lady Vetter here on behalf of L3Harris Technologies. Mr. Jenny asked this court to reverse and remand for a jury trial based on a speculative assertion that his supervisor, Mr. Gentile, as he just said, could have been planning to terminate his employment prior to his pivotal conversation with Mr. Gentile at the October 23, 2019 conversation. But as the district court properly observed, quote, by the undisputed evidence, defendant's intent to terminate was formed only after the country club conversation. A conversation that Mr. Jenny testified was about his displeasure with being placed in an individual contributor role, the only role that Mr. Gentile had set aside for him, was unrelated to his disability or request for accommodations. A conversation with an individual in Mr. Gentile who he testified, I have no idea if he has a bias against me. So accordingly, even if we conclude that there's some indication of an inconsistency with their explanation, some indication of pretext, the district court got it right when it applied Reeves to conclude that notwithstanding some indication of pretext, there is abundant, uncontroverted evidence of a nondiscriminatory reason for discharge. Namely, Mr. Jenny's response to the proposal that he be placed in an individual contributor role at that off-site meeting. Which was, what was that response? Yeah, sure. What was that response? Yes, he was angry. He said it was bullshit. He said, I don't want to be an individual contributor. And according to his testimony, he said, he found out about this. Nobody tells him about it. He finds out about it at a meeting where it's announced. I'm removing you from your job. And I'm making this an all new job with basically the same title and giving it to another person. And he goes up to Mr. Gentile and says, what is happening here? I, you know, why is this happening? I wasn't told what happened to my job. I want to apply then for this job, the new job with a new name. And he says, Mr. Gentile says, yeah, it's already a done deal. And he says, well, fix it. Fix it is his testimony. And he also says that he said to Mr. Gentile, if you can't fix it, then I want another position in the company. And if you can't fix it or give me another position, then I want to be packaged out. Now, Mr. Gentile says, yeah, he just said he wanted to be packaged out. That's a fact question as to who is telling the truth there about that conversation. And if you accept that that's a fact question, then you don't have this reason of, oh, he said he wanted to be packaged out, because that's possibly not the truth. Right? Is that right? Judge Parrish below saw it the same way.  She concluded that there was an issue of fact, a dispute between these two narratives about exactly what was said. Did he say put a deal on the table and let's talk? Did he say package me out? There is some subtle, I would argue, subtle differences. If you believe the plaintiff, which is he was shocked, his job was being removed. He's told it at a meeting. And he says, what is happening here? Please fix this. I don't. What's my job? Find me something else, please. And if you can't do these things, then OK, package me out. And that comes. And then the next day, he says, Mr. Gentile goes and says, oh, he wants to be packaged out, making part of the riff. You're asking us to accept Mr. Gentile's reasoning. No, not true. We've accepted this. What evidence is in the record that Mr. Gentile had any idea what he was going to do with the plaintiff before that meeting? Sure. There's evidence in the record about his intention to maintain his status as an individual contributor. We have his testimony, but we're not limited to just his word. Mr. Banton's email is a key piece of evidence, date of October 24th. The timeline you've just laid out, Judge Moritz, is exactly right. After this conversation, he immediately reaches out to Mr. Banton in HR and says, we've got to talk. Set him a calendar appointment. When Mr. Banton saw the calendar appointment, he knows this is October 24th. We've got to approve the reduction of force today. I hope he's not talking about laying off Mr. Gentile. So he writes him this email. He says this, the current mapping exercise has him going from a senior director level 8 in our current system to a principal level 8 individual contributor role in the new 2020 system. Now, Mr. Gentile argues, oh, that's just something HR was doing. He's misconstruing the record there. Ms. Neese, an HR employee, did describe an alignment of job titles task that they were doing. They eliminated the senior director position. Senior directors would become directors. But notably, this is not what Mr. Banton says. He says not that he's been re-leveled from a senior director to a director, which is the process that Ms. Neese was describing. He's been re-leveled from a principal, from a senior director to an individual contributor role. That's not the only key statement in Mr. Banton's email. There's one more. Prior to that, Judge Murphy, you were asking about discussions about the reduction of force. I agree we don't have a clear date in the record. But plainly, it's after the merger in July and before October 23rd. Mr. Banton says this. Wanted to check in with you to confirm that this is not a discussion about possibly terminating him because, based on our earlier conversations, we have not included him in the reduction in force. And so, to your question, Judge Moritz, yes, perhaps there is a question of fact about what exactly was said. But Mr. Jenney is not correct when he says whenever you show pretext, you get a jury trial. That's not what the court said in Regents. Well, what we have here, let's not forget, we do have, as you point out, a very strong district court finding that the reason that was given is implausible. It is not essentially true. And the district court then said, well, there's got to be one of these exceptions. And nothing that you're saying leads me to believe that these very rare exceptions apply here. And one is where the record conclusively establishes that some other non-discriminatory reason is the reason for the employer's decision. The record must conclusively establish that. Or there's a very weak issue of fact as to whether the reason was untrue, and there's abundant and uncontroverted evidence that no discrimination occurred. I don't know of any case where there's this type of evidence of immediately prior to this, he's asked for an accommodation and been granted it, and then he's turned down for these two travel requests that he normally would not be turned down for. And then we have this riff. I mean, I don't know how you can fit that into those exceptions. Do you see what I'm saying? Oh, of course I see what you're saying. Let me try to respond. Keeping in mind the district court's fact finding that the reason given was implausible. I'm not sure. I remember her saying it was implausible, but she does indicate that based on the differences in how that conversation on October 23rd was described alone, there was an indication, a pretext. Let's look at the travel denials. Mr. Jenny does argue that there were two international trips that were denied after his accommodation was put in place. He testified, though, that there were multiple times he asked to go to Spain before the accommodation was put in place that were denied. He testified that all of his domestic travel was approved. And Mr. Gentile described the business reasons, including budget. And what's more, Mr. Jenny acknowledges that with respect to this trip to the UAE, Mr. Jenny wasn't treated any differently than anyone else because no one was permitted to go. With respect to the- Wait a minute. The latter. No one was allowed to go, you say? No one was allowed to travel, have foreign travel? To this particular conference that was denied. Okay. Not outright. There were two conferences. That's correct. And there wasn't any real change in travel policy, was there? No, there was no change in travel policy, and the policy was, though, to cut down on costs. So each of the instances are unique in themselves. Dealing with Jenny and his travel stuff was not pursuant to a change in travel policy. It was just- The policy was already in place to cut down costs. And Mr. Dantili described that he implemented those decisions consistent with that policy on these two trips, taking in mind that his other trips were approved. Okay. I interrupted you because I didn't- I do want to talk about this notion that there is this strong evidence of pretext regarding the differences in how Mr. Jenny describes the October 23rd conversation and how Mr. Dantili describes it. Because I don't think Mr. Jenny agrees with you, Judge Moritz, that there is a clear disagreement. Mr. Jenny says that his account of saying, fix this or put a deal on the table and let's talk, and Mr. Jenny's recollection of saying, I don't want to be an individual contributor, so package me out, he describes those two accounts as, quote, similar. Right? So I don't know that we have this strong case of pretext. Perhaps Mr. Dantili recalled it incorrectly. Perhaps Mr. Jenny did. Mr. Jenny noted that- Well, we have Mr. If- There's other things that, particularly the email or letter that he writes to his boss later, Mr. Dantili saying, oh, by the way, here's my new reasons for terminating Mr. Jenny. And it's all performance related, and he never really knew what his role was in the organization. Two big reasons that have nothing to do with a reduction in force.  That is strong evidence of pretext. Well, again, it may be evidence of pretext, but it needs to be pretext for- Oh, and then he later changed in his deposition and said, yeah, I didn't fire him for performance reasons. It was a writ. Well, he never said that he fired him for performance reasons, and I don't believe the email states that. What does it say? He says, I released the senior director that was never told what his function was in the old structure. Just goes on to describe that he had a continuity of recurring issues. The continuity of recurring issues were performance related issues. That's right. He described the emotional outburst as well. It's clearly suggesting there were performance issues and that they've been going on for some time. That's right, Judge Moritz. And that's different than a riff. It's a lot different than a riff. Or even saying that he would have some individual consulting role. It's completely contrary to that. It's perhaps consistent with the decision to place him in an individual contributor role. I'll grant you that. But there's nothing inconsistent. Two things can be true at the same time, as the court said in the Braun case, the Goldstein case. Mr. Jenny can believe at once- It's evidence of pretext, is my point, which is what the district court found. Correct. And then applied Reeves, right? Because Reeves was asked this question, right? Hey, the question we're asked is, whenever a plaintiff shows a prima facie case in evidence of pretext, are they entitled to a jury trial? And the court answered that with the lawyer's two favorite words, right? It depends. The court did not say, yes, always, absolutely so. The court said there will be times, notwithstanding evidence of pretext, when there is abundant, uncontroverted evidence of a nondiscriminatory reason. Here, as Judge Murphy pointed out, he had an opportunity to include Mr. Jenny in the reduction in force. Closer in time to the accommodation putting in place. Mr. Banton's email confirms, though, that based on their earlier conversations, he was not going to be put in place in the riff. So is there some question of fact about why Mr. Jenny was placed in an individual contributor role? Perhaps. But this case is not about that. This is not a demotion case. This is a termination case. Mr. Jenny pleaded it this way. He does not allege any cause of action alleging termination or, excuse me, alleging bias in connection with the decision to put him in an individual contributor role. So even if we conclude that there's evidence of pretext or even bias associated with putting him in the individual contributor role, the evidence is still abundant. It's uncontroverted that there was no intention to terminate him until the October 23rd off-site conversation. And then immediately afterwards, we see a shift. Mr. Jenny argued that the district court relied on only two things. That is not true. Looking at page 14 of the court's decision, the court said the record reveals some other nondiscriminatory reason for the employer's decision. By the undisputed evidence, defendant's intent to terminate Mr. Jenny was formed only after the country club conversation. And then she lists the evidence. First, this is shown by the undisputedly rushed nature in which Mr. Jenny was added to the riff list immediately after the conversation at the country club. Right? Didn't need to be rushed. It was going on for weeks. He could have added him earlier, but it was only after that off-site conversation unrelated to disability, unrelated to accommodation. Second, the correspondence from human resources signaling a lack of any intent to terminate him before that point. And then the court says, by all accounts, the country club conversation did not involve in any way any fact related to Mr. Jenny's disability or request for accommodations. Right? Instead, it was about the fact, as Mr. Jenny's own counsel acknowledged, he said, I don't want to be an individual contributor. That was the only role available for him, and so he was included in a reduction in force. We thank the court for your time. I see that my time has expired, and we rest on the briefs. Thank you. Thank you, counsel. Rebuttal? Your Honors, just briefly, this court's made clear that the Reeves exceptions are only invoked in very narrow and limited circumstances. And the problem with the argument regarding the timing from the meeting between Mr. Gentile and Mr. Jenny at the off-site and his inclusion on the RIF is the November 26th email that Mr. Jenny sends to his boss, where he describes why he actually terminated. He doesn't say, Jenny asked me to leave because he didn't want to be an individual contributor, and I wanted to get him the best package possible. That's what Mr. Jenny said in his deposition. Three weeks after he had terminated Mr. Jenny, in an email to his boss, he said, quote, I took it upon myself to fix the department, and, quote, I released the senior director that was never told what his function was in the old structure under Kevin Kane. I had proof he was a continuity of reoccurring issues in organization, engagement, execution, and capture affecting the team and relations within the CS organization. In his deposition, Mr. Gentile testified he never had any performance issues with Mr. Jenny. Remember, Mr. Jenny is a 27-year employee who had multiple promotions, held multiple positions. He was in an identical role that, after Mr. Gentile learned of his disability and accommodation request, promoted somebody to fill essentially that same role, just with a different title and reporting function, without talking to Mr. Jenny, without posting the position, without interviewing anyone. This was all part of a sequence of events that led up to Mr. Jenny's termination. You cannot say that the event, that the 23rd discussion between Mr. Gentile and Mr. Jenny is the reason for the termination when Mr. Gentile himself gave a different reason contemporaneous in time. So the only argument, the only fact that the district court relied on was proximity. A jury could certainly decide that Mr. Gentile had planned all along to notify Mr. Banton that he was going to riff Mr. Jenny. He could have been planning to see if Mr. Jenny would leave once he announced who would place his role. What about the evidence that he was planning to put him in an individual consulting role? Well, Your Honor, the email from Mr. Banton, I think it's clear, it's critical for a number of reasons. And I think that the defendant employer is making inferences in its favor from that email. But it is Mr. Banton that is telling Mr. Gentile that he will be placed in an individual contributor role, not vice versa. There's no evidence in the record that Mr. Gentile ever told the plaintiff this. Right, there's no record he told the plaintiff. There's no record he told his boss. Or anything else. And Mr. Banton's declaration that is part of the record makes clear that the first time that he learned that Mr. Ameney would be put in the position that Mr. Gentile, or Mr. Jenny had been in, was on October 24th. So there's nothing in the record that indicates. The day after? The day after. There's nothing in the record that indicates Mr. Gentile had actually told HR he wanted Jenny in an individual contributor role. Thank you, Your Honor. Thank you both. Your arguments have been very helpful. The case will be submitted and counsel is excused. Thank you.